Filed 1/31/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| WILLIAM MICHAEL HENSLEY et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>SAN DIEGO GAS & ELECTRIC COMPANY,<br><br>    Defendant and Respondent. | D070259<br><br><br>(Super. Ct. Nos.<br>37-2008-00093080A-CU-NP-CTL &<br>37-2008-00081779-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.

L. Strauss, Judge.  Reversed.

Manuel Corrales, Jr., for Plaintiffs and Appellants.

Sempra Energy, Office of the General Counsel, San Diego Gas & Electric

Company Office of the General Counsel and Charles Larry Davis, Quinn Emanuel

Urquhart & Sullivan and Daniel H. Bromberg, Kenneth R. Chiate, Kristen Bird and

Jeffrey N. Boozell, for Defendant and Respondent.

After this court dismissed the appeal of plaintiffs and appellants William Michael Hensley and Linda Hensley[1] from a nonappealable stipulated judgment pursuant to a settlement agreement, the Hensleys and defendant and respondent San Diego Gas & Electric Company (SDG&E) entered into an amended stipulated judgment that they assert now constitutes a final disposition of all of their claims. They contend the amended stipulated judgment is final and appealable in that it was entered to facilitate an appeal following the trial court's adverse in limine determination of a critical issue: the Hensleys' legal ability to recover damages for William's emotional distress on trespass and nuisance causes of action arising from a wild fire that damaged their house and property. We now conclude the amended stipulated judgment is final and appealable and our opinion, with respect to the trespass and nuisance claims only, is not advisory. On the merits, we hold the Hensleys were legally entitled to present evidence of William's emotional distress on their claims for trespass and nuisance as annoyance and discomfort damages recoverable for such torts. Because the trial court excluded evidence of emotional distress damages in their entirety, we reverse.

---

[1]     We refer to the appellants individually by their first names for clarity, not out of disrespect.

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

After sustaining fire damage to their home and property in 2007, the Hensleys sued SDG&E alleging causes of action for inverse condemnation, negligence, trespass, nuisance, negligence per se, violation of California Public Utilities Code section 2106, intentional infliction of emotional distress, negligent infliction of emotional distress and violation of Health and Safety Code section 13007.  They alleged in part that the fire caused soot, charring and other damage to their home; damage to their landscaping; and the destruction of 155 avocado trees on their land.  SDG&E moved for summary adjudication of the Hensleys' intentional and negligent infliction of emotional distress claims, arguing in part that they were barred from seeking damages for psychological stress arising from property damages caused by the fire and its aftermath.  After the Hensleys conceded they did not seek emotional distress damages flowing from those two causes of action, the trial court dismissed them.

During the course of the summary adjudication proceedings, the parties disputed whether California law permitted the Hensleys to recover emotional distress damages under their trespass and nuisance causes of action, including damages for the alleged aggravation of William's preexisting Crohn's disease and ensuing losses (medical

_____

[2]     We take judicial notice of our prior unpublished opinion (*Hensley v. San Diego Gas & Electric Company* (Jan. 22, 2016, D068276)), in which this court dismissed the Hensleys' first appeal as taken from a nonfinal judgment.  The parties have incorporated portions of the record from their prior appeal in this case.  (Cal. Rules of Court, rule 8.147(b).)

3

expenses as well as lost employment income from his permanent disability) due to the stress he claimed to have experienced as a result of the fire and its aftermath.

On SDG&E's unopposed motion, the court bifurcated the trial and ordered the damages phase to take place before trial on the issue of liability. SDG&E thereafter moved to exclude evidence of William's asserted emotional distress damages, arguing the Hensleys were not legally entitled to recover the claimed damages under theories of trespass and nuisance. In part, SDG&E argued that while damages for "annoyance and discomfort" were permitted to compensate plaintiffs for an injury to their peaceful enjoyment, emotional distress damages were different, and not permitted for a "negligent" trespass or nuisance involving property damage.

The court granted the motion, ruling William's damages claim, including for lost earnings and permanent disability as a result of his aggravated Crohn's disease, fell within the rubric of "general" emotional distress damages, which under *Kelly v. CBI Constructors, Inc.* (2009) 179 Cal.App.4th 442 (*Kelly*), could not be categorized as the "distinct" and "more minimal annoyance and discomfort" damages recoverable for nuisance and trespass. It excluded all evidence, testimony and argument regarding his emotional distress.

Rather than proceed to trial, the parties in May 2015 stipulated to a judgment pursuant to a settlement agreement,[3] and the Hensleys then appealed from that judgment.

_____

[3]     In part, the parties' stipulation provided: "[T]o avoid trial on only a small part of . . . [William]'s claimed damages, i.e., [his] property damage claims, and to avoid having to try potential liability before seeking an appeal of the trial court's ruling, and if

4

This court dismissed the appeal, holding the stipulated judgment was not a final judgment because its language was ambiguous in that it implied that no final determination had been reached as to liability, and that after resolution of the appeal a trial on liability and damages would transpire. (*Hensley v. San Diego Gas & Electric Company*, *supra*, D068276.) We further held the stipulated judgment violated the one final judgment rule because it did not completely resolve the issues of liability and damages, excluding the contested emotional distress damages. (*Ibid.*) Because those issues remained unresolved, the judgment was interlocutory and did not eliminate the possibility of further litigation and appellate review regardless of the outcome of the first appeal on the availability of emotional distress damages. (*Ibid.*) Finally, we held the ambiguity in the settlement terms created the potential for a complete misunderstanding between the parties that could necessitate additional postappeal trial court proceedings. (*Ibid.*)

Following our remittitur and an unsuccessful writ petition (*Hensley v. Superior Court*, D069946), the parties entered into another stipulation in which SDG&E stated it "denie[d] any liability for the damages claimed by the Hensleys but desire[d] to resolve this dispute to avoid continuing and significant costs of litigating this dispute." The

---

successful on appeal, having to proceed to trial again to recover all of [William]'s claimed damages, the parties agreed to settle this case in a way that allows [William] to seek an appeal and the right to proceed to trial on all of [his] claimed damages before trying liability, including the Crohn's disease related damages the trial court has ruled are not recoverable[.]" Additionally, the stipulation provided that "the parties agree that the Hensleys' appeal rights are preserved, despite entering into a settlement in which a monetary amount shall be paid irrespective of the results of the Hensleys' subsequent appeal[.]" The court ordered "that the Hensleys are entitled to judgment against . . . SDG&E pursuant to an agreement between them which is without prejudice to the rights of the Hensleys to appeal the trial court's ruling . . . ."

5

stipulation states the parties have entered into a settlement agreement "providing for a payment, which already has been made, compensating the Hensleys for their alleged property losses and provided [*sic*] that the Plaintiffs would receive another payment 'if and only if a final order from the California Court of Appeal or California Supreme Court is issued which reverses Judge Strauss's [order excluding evidence of William's emotional distress] and remands for trial in which William . . . may attempt to prove and is specifically allowed to seek damages relating to the alleged exacerbation of his Crohn's disease under any cause of action or legal theory[.]" The stipulation acknowledges the parties' May 2015 stipulated judgment and this court's dismissal of their ensuing appeal, then provides:

"[T]he parties wish to enter into an amended stipulated judgment that is final and appealable but reserves the right of Plaintiffs to appeal from the April 17, 2015 order;

". . . [T]he parties agree that the Court should enter a final judgment resolving all of Plaintiffs' claims and the entire case consisting of the terms set forth below for the purpose of facilitating Plaintiffs' appeal of the Court's April 17, 2015 order:

"1. Plaintiffs . . . shall take nothing on their claims against Defendant SDG&E for inverse condemnation, negligence, negligence per se, violation of California Public Utilities Code [section] 2106, intentional infliction of emotional distress, negligent infliction of emotional distress, and violation of California Health and Safety Code [section] 13007.

"2. Plaintiffs . . . also shall take nothing on their claims against Defendant SDG&E for trespass and nuisance.

6

"3.  Plaintiffs . . . shall take nothing on their complaint against Defendant SDG&E for any asserted claims.

"4.  This stipulated final judgment resolving all of the claims in this case is without prejudice to the rights of Plaintiffs . . . to appeal this final judgment, including the Court's April 17, 2015 order denying William . . . recovery of emotional distress damages arising from his allegations of trespass and nuisance claims, which effectively precluded him from recovering damages for the alleged exacerbation of his pre-existing Crohn's disease allegedly caused by such mental stress."

Based on the stipulation, the court entered a judgment that the Hensleys "take nothing from Defendant SDG&E."  The Hensleys appeal from the amended stipulated judgment.

## DISCUSSION

### I. *Threshold Considerations*

Following the filing of the notice of appeal, we again requested that the parties brief whether (1) this appeal was taken from a nonappealable order or judgment, and (2) the appeal seeks an advisory opinion.  The parties respond that the judgment is final and appealable in that it was taken to facilitate appeal, and provides the Hensleys shall take nothing on all of their causes of action, thereby disposing of all of the claims in the case.  They maintain any opinion is not merely advisory in part because if the Hensleys succeed on appeal, the parties' settlement agreement requires SDG&E to make an additional payment to them.

7

A.  *Final Judgment*

Here, the judgment is final and appealable because it disposes of all of the causes of action in this case.  The trial court's new judgment is one in which the Hensleys "shall take nothing" on every cause of action against SDG&E.  There is no pending cause of action following the judgment, nor is there any longer a suggestion or indication in their stipulation or the judgment that the parties seek to retain their right to undergo a trial on any of their causes of action following the resolution of this appeal.  Further, there is no waiver of any statute of limitations or "carve-out" of any claim for refiling and/or prosecution after remittitur, which would render the judgment nonappealable.  (See *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1102-1105 [discussing cases in which judgments were rendered nonappealable due to stipulations to waive applicable statutes of limitation to allow for possible future litigation of unresolved causes of action]; *Abatti v. Imperial Irrigation District* (2012) 205 Cal.App.4th 650, 662-663 [same]; compare *Hill v. City of Clovis* (1998) 63 Cal.App.4th 434, 442, 445 [where parties' stipulation to judgment dismissed two unadjudicated causes of action without prejudice and tolled the statute of limitations until after remittitur, the judgment was not final and appeal would be dismissed] & *Four Point Entertainment, Inc. v. New World Entertainment, Ltd.* (1997) 60 Cal.App.4th 79, 81-82 [judgment entered after summary adjudication of some but not all causes of action not final where parties stipulated that the contemplated appeal " 'shall not prejudice either party's future right to prosecute such claims and causes of action which are being voluntarily dismissed by both parties following the conclusion of the appeal process' "].)  To be appealable, a stipulated judgment must fully resolve all claims

8

in the underlying litigation.  (See *McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1508, fn. 1.)  In *McMahon*, a stipulated judgment was final and appealable where it specified that " 'plaintiff shall take nothing by her first amended complaint' " against any of the defendants.  (*Ibid*.)  The judgment there was appealable because it "fully adjudicates plaintiff's entire case."  (*Ibid*.)  Such is the case here.

Further, the parties' stipulation makes plain their consent judgment is intended to facilitate appeal on the question of whether the Hensleys can recover a component of damages on their trespass and nuisance causes of action.  As we explain below, that provision does not impact our ability to consider this issue.

B.  *Advisory Opinion*

In responding to our request, SDG&E informs us that under the parties' settlement agreement, there will be no proceedings on remand whether or not the Hensleys succeed on appeal.  Because the settlement resolves the Hensleys' claims in this action leaving nothing to be litigated even after remand, we must consider whether our opinion is advisory in the sense that it will resolve only a question of "academic importance" (*TG Oceanside, L.P. v. City of Oceanside* (2007) 156 Cal.App.4th 1355, 1385; *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 566) and not an actual controversy that will result in a judgment that offers effectual relief to the parties.  (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132; *Panoche Energy Center, LLC v. Pacific Gas and Electric Company* (2016) 1 Cal.App.5th 68, 96; *TG Oceanside*, at p. 1385.)  The policy behind this mootness principle is that courts decide justiciable controversies and will not render

9

advisory opinions.  (*Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1157.)

Normally, for example, a reviewing court will dismiss an appeal when the underlying claim is settled or compromised, as the settlement ' "operates as a merger and [bar] as to all preexisting claims and those alleged in the lawsuit that have been resolved.' " (*Larner v. Los Angeles Doctors Hosp. Associates, LP* (2008) 168 Cal.App.4th 1291, 1296; see also *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400 [as a general rule, a consent judgment is not appealable].)  In this case, the parties' stipulation to entry of judgment makes clear that despite their settlement, they reserve their right to appeal the trial court's damages ruling.  They seek to fall within an exception to the general rule as to consent judgments that if the parties' consent to a judgment is " 'merely given to facilitate an appeal following adverse determination of a critical issue, the party will not lose his right to be heard on appeal.' " (*Norgart v. Upjohn Co.*, at p. 400.)  But the parties' mutual intention to preserve an appeal does not control whether this appeal is moot, which would render any decision on our part advisory.  (*Larner*, 168 Cal.App.4th at p. 1298; *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1588.)  "The parties' intent cannot compel this court to issue an advisory opinion on issues in which, after the settlement [a party] no longer retains any individual, personal stake." (*Larner*, at p. 1298.)

Pursuant to their stipulation, the parties' settlement is in part conditioned on the outcome of this appeal on the issue of damages; if we reverse the order and conclude the Hensleys were entitled to present evidence of William's emotional distress damages,

10

SDG&E will pay the Hensleys a previously agreed-upon sum of money. This sum essentially represents a liquidation of the Hensleys' emotional distress damages for their causes of action for trespass and nuisance, and is a matter still at stake between them. As to those causes of action, we may conclude the matter is not moot but presents a live, justiciable, controversy on which our opinion is not merely advisory. (See *Havens Realty Corp. v. Coleman* (1982) 455 U.S. 363, 369, 371 [after appellate ruling on plaintiffs' lack of standing on claims seeking monetary, declaratory and injunctive relief, parties agreed plaintiffs would receive $400 contingent on Supreme Court's grant or denial of certiorari; the case was not moot because their settlement agreement merely liquidated the monetary damages that the plaintiffs were continuing to seek: "Given [plaintiffs'] continued active pursuit of monetary relief, this case remains 'definite and concrete, touching the legal relations of parties having adverse legal interests' "]; *Nixon v. Fitzgerald* (1982) 457 U.S. 731, 743-744 [after lower court ruling in respondent's favor, petitioner agreed to accept liquidated damages conditioned on the U.S. Supreme Court's decision on the issue; this agreement "left both petitioner and respondent with a considerable financial stake in the resolution of the question presented in this Court" and was not moot under *Havens Realty*]; *Doe v. Abbott Labs.* (9th Cir. 2009) 571 F.3d 930, 932-933 [merits were still at issue despite contingent settlement providing for payment depending on outcome of appeal]; compare *Gator.com Corp. v. L.L. Bean, Inc.* (9th Cir. 2005) 398 F.3d 1125, 1131-1132 [court could no longer grant plaintiff meaningful relief in its declaratory relief action, rendering the appeal moot where the plaintiff in a settlement agreement terminated its conduct and was released from liability for its past conduct; "[a]lthough the

11

parties have negotiated a 'side bet' concerning our resolution of this appeal, that wager does not alter the fact that the personal jurisdiction issue is wholly divorced from any live case or controversy"].)[4] Our decision will have no effect on the parties' legal relations as to any other cause of action brought by the Hensleys. The parties have fully and finally settled those matters and we express no advisory opinion as to those causes of action.

Our conclusion that the appeal is not moot under these circumstances furthers the strong public policy of encouraging settlements. (See *Leung v. Verdugo Hills Hosp.* (2012) 55 Cal.4th 291, 306.) But the contingent nature of the parties' settlement presents a unique situation, implicating mootness principles. We discourage parties from reaching agreements that arbitrarily stake payments or "bet" on the outcome of an appeal so as to avoid rendering their case moot, or from creating an agreement divorced from the controversy for the exclusive purpose of obtaining a decision on a matter. Where an issue left to be decided is entirely unrelated to the controversy, parties risk a finding that their settlement has mooted any appeal.

---

4      The matter also appears to fall within one of the discretionary exceptions to mootness: that is, when a material question remains for the court's determination. (*Epstein v. Superior Court* (2011) 193 Cal.App.4th 1405, 1411 [citing cases].) A material question exists when "the judgment, if left unreversed, would preclude a party from litigating . . . an issue still in controversy." (*Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 205.)

II. *The Trial Court Erred as a Matter of Law by Excluding All Evidence of William's Emotional Distress*

A. *Standard of Review*

The parties agree that our review of the court's evidentiary ruling, which resolved a question of law and applied law to undisputed facts, is de novo. Whether a plaintiff is entitled to a particular measure of damages is a question of law subject to de novo review. (*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1324.) We emphasize that the issue at hand is narrow: we do not address whether the Hensleys may maintain an action for trespass or nuisance under these circumstances, SDG&E's liability under these theories, or the sufficiency of the Hensleys' proof of the fact of emotional distress or its extent. The question does not turn on factual disputes over the nature of William's emotional distress and whether it in fact led to his aggravated physical conditions. Indeed, any litigation of these issues is precluded by the parties' settlement, and any exposition on them by this court is advisory. We merely decide whether some or all of William's claimed damages for emotional distress are recoverable as a component of annoyance and discomfort damages allowed in trespass and nuisance cases. If even a part of those damages are recoverable, the trial court abused its discretion by excluding evidence of all such damages, and we must reverse.

B. *Underlying Undisputed Facts*

The trial court had before it the following facts at the time of its ruling via lodged discovery and other evidence. In 2007, the Hensleys resided at the property on Eastvale Road in Poway, California with their daughter. On October 21, 2007, while William was

13

away on a business trip, wildfires occurred that required Linda and their daughter to evacuate their home. Linda called William, who became worried about his family's safety and was frustrated they were alone with no one to help them. He cut his travel short and returned to San Diego, where he drove with Linda to a location and from a distance watched the fire burn houses close to theirs, thinking there was a chance everything was destroyed. Though their home was not completely destroyed, the Hensleys were not able to return home permanently until late November 2007.

William has suffered from Crohn's disease since 1991. Before the fire, his Crohn's disease symptoms were under control, though he had some flare ups and surgery was required approximately once every five years. In discovery responses to whether he claimed "physical injury" due to the fire, William answered that as a result of stress from the fire, he experienced a substantial increase in his symptoms. He asserted that the fire put his wife and daughter in danger, and he was "frustrated and upset that he couldn't help them evacuate or do anything to help them save their property." When asked in discovery if he was claiming damages for mental or emotional injury, William asserted he suffered "annoyance, disturbance, inconvenience and mental anguish as a result of the destruction wrought by the fire." He and Linda asserted that they purchased their property for the large amount of trees on it; they both "looked forward to cultivating their property and enjoying their trees" and "[s]ince the fire destroyed their trees, they have lost their sense of privacy, which was really important to them." They stated that their rebuilding process was frustrating and lengthy. William also claimed his exacerbated Crohn's disease impaired his ability to work and caused him lost income. He stated he

incurred medical expenses for his Crohn's disease since the fire. In his deposition, William described he had a "tremendous amount of stress" and worry as a result of the fire, including due to working with the insurance adjuster, trying to get his losses covered.

In 2012, William's treating physician wrote that "beyond a measure of reasonable medical certainty . . . the stress created by the 2007 San Diego fires caused an increase of [William's] disease activity, necessitating frequent visits, numerous therapies, and at least two surgeries since that time."

C. *Mental Distress Proximately Caused by a Trespass or Nuisance is Recoverable as Annoyance and Distress Damages, Regardless of the Personal Physical Presence of the Owners at the Time of the Trespass or Nuisance*

The Hensleys contend the trial court erred by concluding based on *Kelly*, *supra*, 179 Cal.App.4th 442 that emotional distress is not an element of recoverable damages for trespass or nuisance. They maintain the court disregarded California Supreme Court and appellate court precedent holding that emotional distress is a component of annoyance and discomfort damages, and *Kelly* does not require actual physical presence or personal observation to recover such damages for trespass or nuisance. According to the Hensleys, *Kelly* merely requires that the plaintiff be a legal occupant and have legal possession to recover for his or her annoyance and discomfort. They further point out that William's claimed damages arise from distinct property torts, not merely negligent conduct, and this court already recognized this principle in *Gonzales v. Personal Storage, Inc.* (1997) 56 Cal.App.4th 464.

SDG&E characterizes William's claim as for unrecoverable, "general" emotional distress. It responds that under *Kelly*, *supra*, 179 Cal.App.4th 442, emotional distress damages are proper in trespass and nuisance actions "only if the distress naturally ensued from trespass or nuisance—that is, annoyance or discomfort resulting from personal, physical presence on the property invaded." According to SDG&E, William's alleged stress is not compensable because it did not result from his personal physical presence on the property during the fires, as he was out of town. SDG&E maintains his stress did not result from his later physical presence on the property because he claimed to suffer distress only because he and his family were forced to leave the property; he could not help his wife and daughter and might not be able to return. They argue that his alleged stress and exacerbated symptoms of Crohn's disease as a result of his repair projects, or working with the insurance adjuster, did not naturally ensue from the trespass or nuisance. SDG&E argues the *Kelly* rule is recognized by the Judicial Council and incorporated into official jury instructions, and is in keeping with the "policies generally restricting emotional distress damages." SDG&E further contends that we may affirm the judgment on the theory that under *Erlich v. Menezes* (1999) 21 Cal.4th 543 and other authorities, emotional distress caused by negligent damage to property is not compensable.

SDG&E does not dispute that emotional distress damages are recoverable in trespass and nuisance cases. That proposition is indeed settled: Our high court and lower courts have long held that once a cause of action for trespass or nuisance is established, a landowner may recover for annoyance and discomfort, *including emotional distress or*

16

*mental anguish*, proximately caused by the trespass or nuisance. (*Acadia, California, Limited v. Herbert* (1960) 54 Cal.2d 328, 337 ["It is settled that, regardless of whether the occupant of land has sustained physical injury, he may recover damages for the discomfort and annoyance of himself and the members of his family and for mental suffering occasioned by fear for the safety of himself and his family when such discomfort or suffering has been proximately caused by a trespass or a nuisance"]; *Herzog v. Grosso* (1953) 41 Cal.2d 219, 225-226; *Kornoff v. Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 271-272 (*Kornoff*); *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1607; *Hassoldt v. Patrick Media Group, Inc.* (2000) 84 Cal.App.4th 153, 172, disapproved on another ground in *People v. Rogers* (2013) 57 Cal.4th 296, 330-331; *Armitage v. Decker* (1990) 218 Cal.App.3d 887, 905 ["The general rule is simply that damages may be recovered for annoyance and distress, including mental anguish, proximately caused by a trespass"]; *Koll-Irvine Center Property Owners Assn. v. County of Orange* (1994) 24 Cal.App.4th 1036, 1042, fn. 3 ["Damages for emotional distress can be recovered in an action for private nuisance"; citing cases]; *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 287-288 [" '[M]ental distress caused by the nuisance created and maintained by the defendant is an element of loss of enjoyment' "; citing *Acadia*, *supra*, 54 Cal.2d at p. 337]; *Smart v. City of Los Angeles* (1980) 112 Cal.App.3d 232, 239-240; *Alonso v. Hills* (1950) 95 Cal.App.2d 778, 780, 786-788.)

This is so even where the trespass or nuisance involves solely property damage. (See *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 986, fn. 10 ["precedent in the law of nuisance and trespass establishes quite clearly that emotional distress

17

without physical injury is compensable"; citing cases]; *Acadia, California, Limited v. Herbert*, *supra*, 54 Cal.2d at p. 337; *Kornoff*, *supra*, 45 Cal.2d 265; *Alonso v. Hills*, *supra*, 95 Cal.App.2d at pp. 786-788 [plaintiff suffered "distress in . . . mind, . . . mental anguish and discomfort, annoyance, fright and shock" by reason of blasting operations that caused weakened structural integrity to the building, exterior cracks to the building and walls, damage to window sills and frames, and leaking plumbing].)

In *Herzog v. Grosso*, *supra*, 41 Cal.2d 219, a neighbor blocked access to an easement leading to a public road, forcing the plaintiff and his family to use a steeper and more dangerous path. (*Id*. at pp. 222-223.) The trial court awarded the plaintiffs damages for "nervousness, worry, and mental distress for the safety of themselves and their daughter and others . . . ." (*Id*. at pp. 224, 225.) The California Supreme Court upheld the award: "Once a cause of action for trespass or nuisance is established, an occupant of land may recover damages for annoyance and discomfort that would naturally ensue therefrom" and "in the present case the suffering caused by fear for the safety of the daughter and visitors was a natural consequence of defendant's conduct and an invasion of a protectable interest of an occupant of real property." (*Id*. at p. 226.)

*Herzog* was followed by *Kornoff*, in which the plaintiffs sued the owner and operator of a cotton gin for damages to their real property and personal injury from fumes, dust and lint. (*Kornoff*, *supra*, 45 Cal.2d at p. 266.) A jury initially found plaintiffs had suffered injury only to their real property, not any personal injury. (*Id*. at p. 267.) On a retrial of damages only, the jury was instructed that the plaintiffs were entitled to discomfort and annoyance proximately caused by the trespass, and it reached

18

judgment again for the plaintiffs.  (*Ibid*.)  On appeal to the California Supreme Court, the defendant argued that damages for annoyance and discomfort were error in the absence of personal injury.  (*Id*. at p. 271.)  Before addressing that question, the court observed that the plaintiffs had pleaded that the comfort and enjoyment of their home had been diminished to the extent they had been unable to live normally and peacefully, and they had suffered "severe nervous distress and mental anguish."  (*Id*. at p. 272.)  These allegations, according to the high court, were "sufficient to permit damages for discomfort and annoyance if such damages are otherwise proper."  (*Ibid*.)  The court held they were proper in that case:  "It appears to us that the discomfort and annoyance suffered by plaintiffs is an injury directly and proximately caused by defendant's invasion of their property and that such damages would naturally result from such an invasion.  It also appears to us that discomfort and annoyance may be suffered where there is no physical injury suffered."  (*Ibid*.)

*Kornoff* reviewed numerous cases including *Alonso v. Hills*, *supra*, 95 Cal.App.2d 778, in which the Court of Appeal upheld a damage award for emotional distress as a form of discomfort and annoyance even though the plaintiff was not home at the time of a blast that caused a rock to destroy a bench near the plaintiff's daughter.  (*Alonso*, at p. 788.)  The plaintiff testified in that case that he "could not rest or sleep because of fear for his own security and that of his family . . . ."  (*Id*. at p. 788.)  According to the *Alonso* court, "This is a form of discomfort for which plaintiff under the circumstances of this case is entitled to recover, as well as for other discomfort not challenged on appeal.  The amount of the recovery for discomfort and annoyance is left to the sound judgment and

19

discretion of the trier of facts without necessity of specific evidence as to such amount." (*Ibid.*) *Kornoff* also pointed out that in *Green v. General Petroleum Corp.* (1928) 205 Cal. 328, a trespass action in which the plaintiffs were forced to leave their home due to oil drilling operations, the court upheld a damage award stating, " 'The law affords redress by giving damages against a wrongdoer for the annoyance and discomforts suffered in cases such as this.' " (*Kornoff*, *supra*, 45 Cal.2d at p. 274, quoting *Green*, at pp. 336, 337.) It observed that in *Judson v. Los Angeles Suburban Gas Co.* (1910) 157 Cal. 168, "no impairment of plaintiff's health was involved"; in that case the plaintiff asserted that smoke, odor, and noise produced by gasworks "interfered with his comfortable enjoyment of his property . . . .' " (*Kornoff*, at pp. 274, 275.)

*Kornoff* thus upheld the award of emotional distress damages as part of the plaintiffs' discomfort and annoyance even though the only injury plaintiffs suffered was to their real property, rejecting the defendant's contention that the fear and shock described in prior cases as part of annoyance and discomfort were personal injuries: "While defendant's trespass here is not of the type to cause fright or shock or even physical illness (as found by the jury), it obviously is of the type to cause plaintiffs much annoyance and discomfort. Plaintiffs' property—lawns, flowers, shrubs, window screens, hedges and furniture are, during the ginning season which lasts for approximately six months of each year, covered with a thick coating of dust and lint and ginning waste. This was specifically found to be a trespass and an injury to the real property. The annoyance and discomfort suffered by plaintiffs as a result of the injury to the real property is a natural consequence thereof." (*Kornoff*, *supra*, 45 Cal.2d at p. 273.)

20

*Kornoff* made clear that while the mental distress suffered by the plaintiffs there did not rise to the level of fright or shock, it was nevertheless compensable.

*Kornoff* concluded: "The California cases appear to draw no distinction between cases involving nuisance and those involving trespass in permitting an award of damages for discomfort and annoyance directly resulting from an injury to real property. There seems to be no sound reason to refuse [such an] award . . . since it is obvious that such an injury may cause discomfort and annoyance without also causing an actual physical injury to the person." (*Kornoff*, *supra*, 45 Cal.2d at p. 275.)

Under the above authorities, William's fear, stress and anxiety suffered as a direct and proximate result of the fire and its attendant damage, loss of use and enjoyment are compensable as damages for annoyance and discomfort. For purposes of the trial court's in limine consideration of the damages issue, it was undisputed to a reasonable medical certainty that William suffered stress due to the fire and its aftermath, even though he was not physically present to see the fire ravage his house and land. It was undisputed based on the parties' discovery that William's emotional distress in part encompassed fear for his family's safety and feelings of helplessness while the fires forced their evacuation without him. He suffered lost enjoyment of his property due to the destruction of numerous privacy trees from the fire, and he is entitled to recover for attendant mental suffering. (See *Smith v. County of Los Angeles*, *supra*, 214 Cal.App.3d at p. 288 [mental distress caused by a defendant's nuisance "is an element of loss of enjoyment"].) The notion that annoyance and discomfort, including emotional distress, "naturally ensues" or is a natural consequence of an invasion of a protectable interest in real property is nothing

21

more than a recognition of the significance and importance of such interests. It cannot be denied that annoyance and discomfort would naturally ensue when a fire damages a family home and destroys unique and valued property features.

Given the posture of this case, it is not within our purview to decide whether William's stress and ensuing exacerbation of Crohn's is unsupported by evidence, unrelated to the fires, or too attenuated and speculative to be recoverable. The case has not been tried to a jury, nor will it be. Having excluded any evidence of William's emotional distress in its entirety on the theory that these damages are somehow distinct from annoyance and discomfort, the trial court abused its discretion, and we reverse its order.

2. Kelly *is Unpersuasive Dicta on the Scope of Annoyance and Discomfort Damages*

We reject SDG&E's contention that in order for emotional distress damages to "naturally ensue" from a trespass or nuisance, the owner or occupant must be personally or physically present on the invaded property during the trespass or nuisance. As *Kornoff* and *Alonso* demonstrate, the plaintiff need not be physically present when the invasion occurs to recover for resulting emotional distress. Authorities decided since *Kornoff* are in accord. *Hassoldt v. Patrick Media Group, Inc.*, *supra*, 84 Cal.App.4th 153, involved a lawsuit including claims for trespass, nuisance, and intentional infliction of emotional distress stemming from an improper and "severe[]" tree trimming that had occurred while the plaintiffs were not present on their property. (*Id*. at pp. 158, 172.) On appeal from a judgment in plaintiffs' favor, the Court of Appeal held that the trial court should have

22

granted a nonsuit on plaintiffs' cause of action for intentional infliction of emotional distress because the plaintiffs' absence from their property precluded them from establishing outrageous conduct personally directed at them.  (*Id*. at p. 172.)  However the appellate court observed that its "ruling in no way affects the [plaintiffs'] right to recover for emotional damage based on their remaining causes of action," including for trespass and nuisance.  (*Hassoldt*, 84 Cal.App.4th at p. 172, citing *Kornoff*, *supra*, 45 Cal.2d at p. 272 & *Herzog v. Grosso*, *supra*, 41 Cal.2d at p. 225.)

And SDG&E's proposition is not supported by *Kelly*, *supra*, 179 Cal.App.4th 442. SDG&E characterizes *Kelly* as the "leading case in California" on the scope of emotional distress damages available in trespass and nuisance actions.  We cannot agree with SDG&E's characterization of the case.  As we explain, *Kelly* is unpersuasive dicta on the point, and relies on Colorado authority that we are not bound to follow.[5]

In *Kelly*, the defendant sparked a brush fire that caused significant damage to a ranch owned by the plaintiff.  On plaintiff's causes of action for trespass and negligence, a jury awarded $543,000 in damages for the plaintiff's "discomfort, annoyance,

---

5    SDG&E urges us to follow *Kelly* because the Judicial Counsel cites to it in comments to an official jury instruction, CACI No. 2031.  Our rejection of *Kelly* resolves that point.  Though the Judicial Council endorses its official jury instructions and encourages their use (Cal. Rules of Court, rule 2.1050(e)), "[t]he articulation and interpretation of California law . . . remains within the purview of the Legislature and the courts of review."  (Cal. Rules of Court, rule 2.1050(b).)  Moreoever, the fact the Judicial Council adopted this instruction does not mean the prior BAJI instructions are defective or outdated.  (*People v. Lucas* (2014) 60 Cal.4th 153, 294, overruled on other grounds in *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19; see also *People v. Thomas* (2007) 150 Cal.App.4th 461, 465.)  No statute, rule of court or case mandates the use of official jury instructions at the exclusion of other valid instructions.  (See *Thomas*, at p. 466 [addressing CALCRIM instructions].)

23

inconvenience or mental anguish" even though he did not reside on the property at the time of the fire. (*Kelly*, *supra*, 179 Cal.App.4th at pp. 446-447, 450.) The trial court had denied the defendant's in limine motion seeking to exclude evidence of plaintiff's annoyance and discomfort damages on the ground he did not reside on the property at the time the damage occurred, and its instructions to the jury made no reference to the requirement that he occupy the property to recover such damages. (*Id*. at p. 455.)

The question on appeal was whether that omission in the jury instruction was prejudicially erroneous; whether on the undisputed facts presented, plaintiff "legally . . . occupied" the property so as to be eligible for such annoyance and discomfort damages. (*Kelly*, *supra*, 179 Cal.App.4th at p. 455.)[6] The court acknowledged that the parties had agreed occupancy was required and that it entailed some physical presence on the property, a proposition with which the court agreed. (*Id*. at p. 456.) The defendant on appeal argued that an occupant was synonymous with "resident" and that only a resident owner and or tenant could recover annoyance and discomfort damages. (*Ibid*.) The plaintiff argued he "occupied" the property because he stored equipment and personal property there. (*Ibid*.)

---

6    There was no question in *Kelly* that in general, damages for mental anguish proximately resulting from a trespass are recoverable. The jury was instructed in part that the plaintiff "may also recover damages that would reasonably compensate him for the discomfort, annoyance, inconvenience and mental anguish proximately caused by the Defendant's act of trespass. . . . The amount of damages to be awarded for discomfort, annoyance, inconvenience and mental anguish, is left to the sound judgment and discretion of the jury based upon the evidence." (*Kelly*, *supra*, 179 Cal.App.4th at p. 455, fn. 3.)

24

The Court of Appeal held that by merely storing personal property on the land the plaintiff did not occupy it for purposes of recovering such damages; but such damages were only available to the "immediate and personal possessor" of property. (*Kelly*, *supra*, 179 Cal.App.4th at pp. 456, 457, 458.) In reaching that conclusion, it pointed out that the California Supreme Court in *Kornoff*, *supra*, 45 Cal.2d 265 recognized that damages for annoyance and discomfort were recoverable by an "occupant of land" as long as the damages would naturally ensue from a trespass. (*Kelly*, 179 Cal.App.4th at p. 456.) It then stated: "We do not question that a nonresident property owner may suffer mental or emotional distress from damage to his or her property. But annoyance and discomfort damages are distinct from general damages for mental and emotional distress. Annoyance and discomfort damages are intended to compensate a plaintiff for the loss of his or her peaceful occupation and enjoyment of the property." (*Ibid*.) For these propositions, the court relied on Colorado cases including *Webster v. Boone* (Colo.Ct.App. 1999) 992 P.2d 1183, which *Kelly* stated were "consistent" with the California Supreme Court's holding in *Kornoff*. (*Kelly*, 179 Cal.App.4th at p. 457.) *Kelly* stated that "[l]imiting annoyance and discomfort damages to the immediate and personal possessor of property is consistent with [California] authorities" and those cases upholding such damage awards "have involved a plaintiff who was in immediate possession of the property *as a resident or commercial tenant*." (*Id*. at pp. 457-458, italics added, citing authorities including *Kornoff*, *supra*, 45 Cal.2d at p. 272 and *Alonso v. Hills*, *supra*, 95 Cal.App.2d 778.)

25

The Court of Appeal concluded that "the nature of the injury compensated by annoyance and discomfort damages involves some personal effect that arises from the plaintiff's personal, physical presence on the premises. Furthermore, the notion that storage of personal property on the premises constitutes 'occupancy' is not consistent with the general understanding of that term. . . . In common parlance, to 'occupy' means, as relevant here, 'to reside in as an owner or tenant.' " (*Kelly*, *supra*, 179 Cal.App.4th at p. 459.) Thus, it held a nonresident property owner who merely stores personal property on the premises is not entitled to recover annoyance and discomfort damages from a trespass. (*Ibid.*)

*Kelly* stands only for the proposition that legal occupancy is required to recover damages for annoyance and discomfort in a trespass case, and that standard requires immediate and personal possession, as a resident or commercial tenant would have. Here, there is no dispute the Hensleys both owned and resided on their property, and they meet the legal standard of occupancy necessary to claim damages for annoyance, discomfort, inconvenience or mental anguish proximately caused by the trespass, as the jury was instructed without controversy in *Kelly*. (*Kelly*, *supra*, 179 Cal.App.4th at p. 455, fn. 3.) *Kelly* does not hold that an occupant must be personally or physically present *at the time of the harmful invasion* to deem emotional distress damages "naturally ensuing" therefrom. To the contrary, in citing authorities involving plaintiffs in immediate possession as residents or commercial tenants, *Kelly* refers to *Alonso v. Hill*, *supra*, 95 Cal.App.2d 778, in which the plaintiff owner and occupant was not personally present during one of multiple trespasses. (*Kelly*, at p. 458.) And *Kelly*'s distinction

26

between "general" or "pure" emotional distress damages and damages for annoyance and discomfort is not binding on us for two reasons. First, it was not a principle necessary to the court's decision. (See *City of San Diego v. Board of Trustees of California State University* (2015) 61 Cal.4th 945, 958 [dictum is the statement of a principle not necessary to the decision]; *Simmons v. Superior Court* (1959) 52 Cal.2d 373, 378, 341 ["Incidental statements or conclusions not necessary to the decision are not to be regarded as authority"]; *Contreras v. Dowling* (2016) 4 Cal.App.5th 774, 787 [dictum is "binding on no one"].) Second, it relies on Colorado authority, which we decline to follow. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 490 ["out-of-state decisions are not binding on this court"]; *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447, fn. 2.) California law does not support the distinction in this context.

III. *Negligence and Breach of Contract Cases Are Not Controlling in Cases Presenting Tort Claims of Trespass and Nuisance*

SDG&E asserts that *Kelly* is an application of the policies restricting damages for emotional distress, and it reviews circumstances where such damages are not recoverable, including for bystanders to medical procedures, breaches of contract, and negligence. It points out that the restrictions ensure the validity and reliability of such damages, which are less objectively verifiable than other types of injury; conserve judicial resources; and avoid limitless liability. SDG&E argues that the trial court's ruling may be upheld on the independent theory—stated in cases such as *Erlich v. Menezes*, *supra*, 21 Cal.4th 543 and *Cooper v. Superior Court* (1984) 153 Cal.App.3d 1008—that emotional distress resulting from property damage is not compensable. SDG&E argues this case presents a situation

27

where the Hensleys' "property was damaged by an invasion . . . resulting from the defendant's alleged negligence . . . ."

The latter argument misapprehends the nature of the torts at issue.  " 'The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another. Such invasions are characterized as intentional torts, regardless of the actor's motivation.' " (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1042; *Church of Christ in Hollywood v. Superior Court* (2002) 99 Cal.App.4th 1244, 1252; *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1402.)[7] Nuisance, an unreasonable interference with the use and enjoyment of the plaintiff's land without interference with possession (*Wilson v. Interlake Steel Co.* (1982) 32 Cal.3d 229, 232; *San Diego Gas & Electric. Co.* (1996) 13 Cal.4th 893, 938; *Rancho Viejo, LLC v. Tres Amigos Viejos, LLC* (2002) 100 Cal.App.4th 550, 562), also may be committed without any element of negligence.  (*Sturges v. Charles L. Harney, Inc.* (1958) 165 Cal.App.2d 306, 318.)

---

7      Trespass may be committed "by consequential and indirect injury as well as by direct and forcible injury." (*Wilson v. Interlake Steel Co.*, *supra*, 32 Cal.3d at p. 232; see *Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50 Cal.App.4th 1301, 1306.)  The only intent required to commit a trespass is an intent to enter the land regardless of motivation; a trespass may be committed by an act that can be intentional, reckless or negligent.  (See *Herzberg v. County of Plumas* (2005) 133 Cal.App.4th 1, 10, fn. 6, quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 604, p. 704; see *Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1480-1481 [the intent of a trespasser is simply an intent to be at the place on the land where the trespass allegedly occurred, and a defendant "is liable for an intentional entry although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong"].)

Negligence and breach of contract cases are inapposite where the torts of trespass and nuisance are involved. As we have summarized above, "precedent in the law of nuisance and trespass establishes quite clearly that emotional distress without physical injury is compensable." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 986, fn. 10; see *Acadia, California, Limited v. Herbert*, *supra*, 54 Cal.2d at p. 337; *Kornoff*, *supra*, 45 Cal.2d at p. 272.) Where the sole damage from a trespass or nuisance is to the property itself, emotional distress damages are not precluded. This is consistent with the fact that in a tort case, the measure of damages is "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333; see *Erlich v. Menezes*, *supra*, 21 Cal.4th at p. 550; *Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1481; see also Rest.2d, Torts § 929(1)(c); Rest., Torts § 47, com. on clause b ["mental distress caused by a tortious act is a matter to be taken into account in determining the damages recoverable in an action of tort. This is so although the tort is one which is actionable even though no tangible harm is done, as where the plaintiff recovers for a merely offensive and intentional contact or where he recovers because the defendant has harmlessly intruded upon his land"].)

The Hensleys correctly observe that this court previously recognized the distinction in *Gonzales v. Personal Storage, Inc.*, *supra*, 56 Cal.App.4th 464, involving plaintiff's claim of conversion of sentimental items of personal property. There, this court explained that the restrictions on emotional distress damages involved in breach of contract or negligence cases do not apply when a plaintiff's emotional distress is the

29

result of the defendant's commission of a tort arising from an invasion of a property interest. (See *Gonzales*, at p. 475.) *Gonzales* distinguished negligence from the "distinct torts" of conversion, trespass and nuisance, pointing out that "with respect to trespass, the law is clear that '. . . damages may be recovered for annoyance and distress, including mental anguish, proximately caused by a trespass.' " (*Gonzales*, at p. 475, quoting *Armitage v. Decker*, *supra*, 218 Cal.App.3d at p. 905.) This court pointed out the plaintiffs in *Armitage* were permitted to recover for distress they suffered " 'as a result of having their property line buried under large amounts of dirt' " and that the evidence also supported a conclusion that they "suffered distress due to the spillage of dirt onto their property and the threat of interference with drainage on their property, as well as concern over appellant's operation of the bulldozer on the berm." (*Gonzales*, at p. 475, citing *Armitage*, at pp. 905-906.)

We emphasized the difference between negligent damage to personal property, for which the law generally will not permit recovery of emotional distress damages, and the conversion of personal property: " ' "The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which the injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action." [Citations.]' [Citations.] Thus, where a warehouseman delivers stored household goods to a corporation which appears to have a bona fide claim of ownership, the warehouseman will be liable for conversion if the corporation is eventually unable to establish its title.

30

[Citations.] The liability of the warehouseman for conversion arises even though there is no element of negligence involved." (*Gonzales v. Personal Storage, Inc.*, *supra*, 56 Cal.App.4th at pp. 476-477.) This court also explained that the act of dominion would provide the converter with very direct knowledge of the likely emotional consequence of his or her interference, as opposed to the person who merely negligently destroys personal property. (*Id.* at p. 477.) Accordingly, where the distinct tort of conversion is involved, "there is far less likelihood that allowing recovery for emotional distress damages will create liability which is out of proportion to the nature of the defendant's act" and "considerably less justification for imposing the limits on emotional distress damages which exist in negligence cases, such as *Cooper* [*v. Superior Court*, *supra*, 153 Cal.App.3d 1008]."[8] (*Gonzales*, at p. 477.) We concluded: "[N]otwithstanding further developments in the law of negligence, damages for emotional distress growing out of a defendant's conversion of personal property are recoverable." (*Ibid.*)

---

[8]    In *Cooper v. Superior Court*, *supra*, 153 Cal.App.3d 1008, also relied upon by SDG&E, the plaintiff's home was struck by defendant's tractor due to defendant's negligence in permitting it to roll from where it was parked. (*Id.* at p. 1010.) In addition to damages to her property, the plaintiff sought damages for emotional distress arising out of the incident. (*Ibid.*) The defendant successfully moved for summary adjudication of the emotional distress claim, contending the plaintiff could not state a cause of action for emotional distress arising from damage to her property. (*Ibid.*) The Court of Appeal upheld the summary adjudication, holding "recovery [for emotional distress arising out of loss of property] is limited to cases where, at a minimum, a duty of care exists by virtue of a preexisting relationship between the parties or where the damage arises out of an intentional tort." (*Id.* at p. 1013.) SDG&E also points to *Lubner v. City of Los Angeles* (1996) 45 Cal.App.4th 525, in which plaintiffs sued the city for negligence after a city trash truck rolled into the plaintiff's home, damaging the plaintiff's artwork. (*Id.* at pp. 528, 533.)

The same rationale is true for the torts of trespass and nuisance, invasions of protectable interests in real property that may be committed regardless of negligence. *Gonzales* supports the conclusion that emotional distress damages are available in cases of trespass and nuisance where the mental anguish or emotional distress is proximately caused by the invasion, and are not subject to the limitations on such damages imposed in negligence cases.

SDG&E's reliance on *Erlich v. Menezes*, *supra*, 21 Cal.4th 543 and other negligence cases is unavailing. *Erlich* involved the defendant's breach of a contract to build a house due to negligent construction. (*Id*. at pp. 549-550.) The court stated the scope of its holding: "We granted review in this case to determine whether emotional distress damages are recoverable for the negligent breach of a contract to construct a house." (*Erlich*, at p. 548.) There, reviewing the differences between damages for torts and damages for breach of contract, the court found the action did not support an award of damages for emotional distress. (*Id*. at pp. 550-551, 554.) Though *Erlich* recognized that certain conduct amounting to a breach of contract could become tortious, as where it also violates a duty independent of the contract arising from principles of tort law (*id*. at pp. 551-552), the jury there had concluded the defendant did not act intentionally or commit fraud. (*Id*. at p. 554.) Thus, the mere negligent breach of contract in that case was "not sufficient to support tortious damages for violation of an independent tort duty." (*Id*. at p. 554.)

SDG&E points in isolation to *Erlich*'s statement that " '[n]o California case has allowed recovery for emotional distress arising solely out of property damage[.]' "

(*Erlich v. Menezes*, *supra*, 21 Cal.4th at p. 554, citing *Cooper v. Superior Court*, *supra*, 153 Cal.App.3d at p. 1012.)  In making that statement, *Erlich* was observing that even if the defendant's negligence gave rise to a sufficient independent duty to the plaintiffs, such a finding would not entitle them to emotional distress damages:  " 'The fact that emotional distress damages may be awarded in some circumstances [citation] does not mean they are available in every case in which there is an independent cause of action *founded upon negligence*.' "  (*Id.* at p. 554, italics added.)  Because the plaintiffs' mental suffering due to the negligent construction of the house " 'derive[d] from an inherently economic concern,' " there was no precedent for an award of emotional distress damages based on a finding of the defendant's negligence.  (*Id.* at p. 558.)  *Erlich* pertains only to actions for negligent breaches of contract or negligence.  It does not address nuisance or trespass cases, or whether emotional distress damages are available in such cases at all.  Nothing in *Erlich* precludes or limits the Hensleys from seeking emotional distress damages.

At oral argument, SDG&E's counsel stated that under the settlement agreement SDG&E will pay the Hensleys the additional sum of money if there is a trial on William's emotional distress damages.  But such a trial is precluded by the parties' conditional settlement, which permitted this appeal.  Our reversal gives the Hensleys what the settlement contemplates, which is a determination in the Hensleys' favor on the legal issue presented.

## DISPOSITION

The judgment is reversed.  The Hensleys shall recover their costs on appeal.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.